**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE KEY AND THOMAS NASH,

        Plaintiffs,

v.

CITY OF CHICAGO, et al.

        Defendants.

Case No. 22-cv-05844

Judge: Honorable Lindsay C. Jenkins

**DEFENDANT MICHAEL SPAARGAREN'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant Michael Spaargaren ("Defendant"), by his undersigned attorneys, answers Plaintiff's Complaint as follows:

1.     This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER:**    Defendant admits this action includes claims that purport to be based on 42 U.S.C. § 1983 and that this Court has jurisdiction over federal and state law claims. Defendant denies any liability to Plaintiff for any and all claims asserted in this action and remaining allegations in this paragraph.

**Parties**

2.     Plaintiff George Key is a resident of the Northern District of Illinois.

**ANSWER:**    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

3.     Plaintiff Thomas Nash is a resident of the Northern District of Illinois.

**ANSWER:**    Defendant lacks sufficient knowledge or information upon which to form a

1

belief as to the truth of the allegations contained in this paragraph.

4.      Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER:**    Defendant admits that Defendant City of Chicago is an Illinois municipal corporation.

5.      Defendants Ronald Watts, Brian Bolton, Darryl Edwards, Robert Gonzalez, Alvin Jones, Kallatt Mohammed, Calvin Ridgell, John Rodriguez, Michael Spaargaren, Gerome Summers Jr., and Kenneth Young Jr. (the "in- dividual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers. Plaintiffs sue the individual officer defendants in their individual capacities only.

**ANSWER:**    Defendant admits that Defendants Ronald Watts, Brian Bolton, Darryl Edwards, Robert Gonzalez, Alvin Jones, Kallatt Mohammed, Calvin Ridgell, John Rodriguez, Michael Spaargaren, Gerome Summers Jr., and Kenneth Young Jr. (the "in- dividual officer defendants") are police officers or were former police officers employed by the City of Chicago. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Overview

6.      Plaintiffs Key and Nash are two of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**ANSWER:**    Defendant denies he engaged in any criminal activity or participated in a criminal enterprise. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

7.      As of the date of filing, more than 150 individuals who were framed by the Watts

2

Gang have had their convictions vacated by the Circuit Court of Cook County.

**ANSWER:** Defendant denies he framed anyone as he understands that term. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

8. Many victims of the Watts Gang are currently prosecuting federal lawsuits. Pursuant to an order of the Court's Executive Committee dated July 12, 2018, these cases have been coordinated for pretrial proceedings under the caption, In Re: Watts Coordinated Pretrial Proceedings, 19-cv- 01717.

**ANSWER:** Defendant denies he engaged in any criminal activity or other alleged misconduct. Upon information and belief, Defendant admits that various individuals have filed federal civil lawsuits against various current and former Chicago police officers and that those cases have been coordinated for pretrial proceedings. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

9. The Executive Committee's Order states that additional cases, such as this one, filed with similar claims and the same defendants shall be part of these coordinated pretrial proceedings.

**ANSWER:** Defendant admits the allegations in this paragraph.

10. The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER:** Defendant denies he engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, or manufactured false charges. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

11.     High-ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise but failed to take any action to stop it.

**ANSWER:**     Defendant denies he engaged in any criminal activity or other alleged misconduct. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

12.     The Chicago Police Department's official policies and customs of failing to discipline, supervise, and control its officers, as well as its "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER:**     Defendant denies he participated in a criminal enterprise and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

13.     Watts Gang officers arrested plaintiffs without probable cause, fabricated evidence, and framed plaintiffs for drug offenses.

**ANSWER:**     Defendant denies he arrested Plaintiffs without probable cause, fabricated evidence against them, framed them for drug offenses, or otherwise engaged in any misconduct. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

14.     Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, the Circuit Court of Cook County vacated the convictions of plaintiffs and granted each of them a certificate of innocence.

**ANSWER:**     Defendant admits the Circuit Court of Cook County vacated Plaintiff's convictions and that Plaintiffs received certificates of innocence. Defendant denies he participated

4

in a criminal enterprise. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

15. Plaintiffs bring this lawsuit to secure a remedy for illegal incarceration, illegal restraints on liberty, and other injuries, all of which were caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

**ANSWER:** Defendant denies he caused Plaintiffs to be illegally incarcerated, denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean, and denies Plaintiffs are entitled to money damages or any other relief whatsoever. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### False Arrests and Illegal Prosecutions of Plaintiffs

16. On January 24, 2004, plaintiffs were arrested by the individual officer defendants at the Ida B. Wells Homes in Chicago.

**ANSWER:** Defendant admits that plaintiffs was arrested on January 24, 2004. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

17. At the time the officers arrested plaintiff Key:

a. None of the individual officer defendants had a warrant authorizing the arrest of plaintiff Key;

b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff Key;

    c.  None of the individual officer defendants had observed plaintiff Key commit any offense; and

    d.  None of the individual officer defendants had received information from any source that plaintiff Key had committed an offense.

**ANSWER:**  Defendant admits he did not have a warrant authorizing the arrest of Plaintiff. Defendant denies he engaged in any misconduct relating to the January 24, 2004 arrest of Plaintiff. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

18. At the time the officers arrested plaintiff Nash:

    a.  None of the individual officer defendants had a warrant authorizing the arrest of plaintiff Nash;

    b.  None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff Nash;

    c.  None of the individual officer defendants had observed plaintiff Nash commit any offense; and

    d.  None of the individual officer defendants had received information from any source that plaintiff Nash had committed an offense.

**ANSWER:**  Defendant admits he did not have a warrant authorizing the arrest of Plaintiff. Defendant denies he engaged in any misconduct relating to the January 24, 2004 arrest of Plaintiff. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

19.    After arresting plaintiffs, the individual officer defendants con- spired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrests, to

cover-up their wrongdoing, and to cause plaintiffs to be wrongfully detained and prosecuted.

**ANSWER:** Defendant denies he conspired, confederated, and agreed to fabricate a false story in an attempt to justify the alleged unlawful arrest, to cover-up their alleged wrongdoing, and to cause plaintiffs to be wrongfully detained and prosecuted. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

20. The false story fabricated by the individual officer defendants included their concocted claims that they saw plaintiff Nash selling drugs to plaintiff Key inside a building at the Ida B. Wells homes and that they found drugs on both plaintiffs' persons.

**ANSWER:** Defendant denies he fabricated a false claim. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

21. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiffs include the following:

a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights;

b. One or more of the individual officer defendants attested to the false story through the official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights; and

c. One or more of the individual officer defendants communicated the false story to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiffs' rights.

**ANSWER:** Defendant denies he prepared false police reports, denies he attested to a

7

false story through the official police reports, and denies he communicated a false story to prosecutors and other Arresting Officers. Defendant further denies he failed to intervene in a violation of plaintiff's rights. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

22.     The individual officer defendants committed the above-described wrongful acts knowing that the acts would cause plaintiffs to be held in custody and falsely prosecuted for offenses that had never occurred.

**ANSWER:**     Defendant denies he committed any wrongful acts and caused Plaintiffs to be wrongfully held in custody and falsely prosecuted. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

23.     Defendant Watts was one cause of the above-described wrongful acts through his direction, encouragement, and facilitation of similar wrongful acts by the other individual officer defendants.

**ANSWER:**     Defendant denies he was directed or encouraged by Watts to engage in wrongful acts.  Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

24.     As the leader of the above-described criminal enterprise, Watts trained the other individual officer defendants to commit the above-de- scribed wrongful acts, encouraged the other individual officer defendants to commit the above-described wrongful acts, and failed to intervene to pre- vent the violation of plaintiffs' rights.

**ANSWER:**     Defendant denies he was trained and instructed as alleged in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

8

25. Plaintiff Key was charged with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER:** Defendant denies engaging in wrongful acts to cause Plaintiff to be charged with a drug offence. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

26. Plaintiff Key knew that it would be impossible to prove that the individual officers had concocted the charges.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

27. Accordingly, even though he was innocent, plaintiff Key pleaded guilty to a drug offense on March 9, 2004, and was sentenced to 2 years of probation. He was later re-sentenced to 30 days in the Cook County Jail and re-committed to probation.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph**.**

28. Plaintiff Key was deprived of liberty because of the above-de- scribed wrongful acts of the individual officer defendants.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

29. Plaintiff Nash was charged with a drug offense because of the wrongful acts of the individual officer defendants.

**ANSWER:** Defendant denies engaging in wrongful acts to cause Plaintiff to be charged with a drug offence. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

30. Plaintiff Nash knew that it would be impossible to prove that the individual officers had concocted the charges.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

31. Accordingly, even though he was innocent, plaintiff Nash pleaded guilty to a drug offense on March 22, 2004, and was sentenced to Cook County Department of Corrections Boot Camp.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

32. Plaintiff Nash was deprived of liberty because of the above-de- scribed wrongful acts of the individual officer defendants.

**ANSWER:** Defendant denies engaging in the above- described wrongful acts Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

### Plaintiffs' Exonerations

33. Plaintiffs challenged their above-described wrongful convictions after learning that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

**ANSWER:** Defendant denies he engaged in any criminal activity or participated in a criminal enterprise. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

34. On April 22, 2022, the Circuit Court of Cook County vacated plain- tiff Key's conviction and granted the State's request to nolle prosequi the case.

10

**ANSWER:** Defendant admits, on information and belief, the Court set aside Plaintiff's conviction and granted the State's request to nolle prosequi the case. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

35. On June 7, 2022, the Circuit Court of Cook County granted plaintiff Key a certificate of innocence.

**ANSWER:** Defendant, on information and belief, admits the Circuit Court of Cook County granted Plaintiff certificate of innocence. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

36. On April 22, 2022, the Circuit Court of Cook County vacated plaintiff Nash's conviction and granted the State's request to nolle prosequi the case.

**ANSWER:** Defendant admits, on information and belief, the Court set aside Plaintiff's conviction and granted the State's request to nolle prosequi the case. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

37. On June 7, 2022, the Circuit Court of Cook County granted plaintiff Nash a certificate of innocence.

**ANSWER:** Defendant, on information and belief, admits the Circuit Court of Cook County granted Plaintiff certificate of innocence. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

**Plaintiffs' Arrests and Prosecutions Were Part of a Long- Running Pattern Known to High-Ranking Officials within the Chicago Police Department**

38. Before the Watts Gang engineered plaintiffs' above-described wrongful arrests, detentions, and prosecutions, the Chicago Police Department had received many civilian

complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER:** Defendant denies he wrongfully arrested, detained, or prosecuted Plaintiffs and denies that he engaged in robbery, extortion, the use of excessive force, planted evidence, fabricated evidence, and manufactured false charges against persons at the Ida B. Wells Homes. Defendant admits he was the subject of citizen complaints during the course of his career. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

39. Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER:** Defendant denies he engaged in robbery, extortion, the use of excessive force, planted evidence, fabricated evidence, and manufactured false charges against persons at the Ida B. Wells Homes and, therefore, denies the allegations in this paragraph that are directed against him. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

40. High-ranking officials within the Chicago Police Department learned about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang, but they deliberately chose to turn a blind eye to the wrongdoing by Watts and his gang.

**ANSWER:** Defendant denies he engaged in any criminal activity or other alleged misconduct. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

41. As a direct and proximate result of the deliberate indifference of these high-ranking

12

officials, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as described above.

**ANSWER:** Defendant denies he engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, or manufactured false charges against persons at the Ida B. Wells Homes, and denies he wrongfully arrested, detained and prosecuted Plaintiffs and therefore denies the allegations in this paragraph as directed against him. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct

42.     At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the Defendants' misconduct.

**ANSWER:** Defendant denies Chicago Police Department maintained official policies and customs that facilitated, encouraged, and condoned the Defendants' alleged misconduct and denies he engaged in any alleged misconduct. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Failure to Discipline

43.     At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER:** Defendant denies he engaged in robbery and extortion, used excessive

13

force, planted evidence, fabricated evidence, or manufactured false charges against persons at the Ida B. Wells Homes, and denies he wrongfully arrested, detained and prosecuted Plaintiffs and therefore denies the allegations in this paragraph as directed against him. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

44.     Before plaintiffs' arrests, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused po- lice misconduct.

**ANSWER:**    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

45.     Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

**ANSWER:**    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

46.     Before the Watts Gang engineered plaintiffs' above-described wrongful arrests, detentions, and prosecutions, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

**ANSWER:**    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

47.     As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and con- trolling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in

14

robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as de- scribed above.

**ANSWER:** Defendant denies he engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, or manufactured false charges against persons at the Ida B. Wells Homes, and denies he wrongfully arrested, detained and prosecuted Plaintiffs and therefore denies the allegations in this paragraph as directed against him. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### Code of Silence

48. At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER:** Defendant denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

49. At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

15

**ANSWER:** Defendant denies being trained at the Chicago Police Academy not to break the code of silence and denies being instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence." Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

50. This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER:** Defendant denies he engaged in misconduct and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

51. Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who at- tempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER:** Defendant denies he engaged in misconduct and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

16

52.     Watts and his gang are not the first Chicago police officers whom the City of Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER:**     Defendant denies he abused citizens or otherwise engaged in any misconduct. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

53.     One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER:**     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

54.     Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, un- lawful searches and seizures, and other crimes.

**ANSWER:**     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

55.     Finnigan and his crew engaged in their misconduct at around the same time that plaintiffs were subjected to the abuses described above.

**ANSWER:**     Defendant denies he engaged in misconduct, including subjecting Plaintiffs to any of the alleged abuses described above. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

56.     Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

57. Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

58. Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER:** Defendant admits Watts and Mohammed were criminally charged in 2012. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

59. Defendant Mohammed pleaded guilty in 2012.

**ANSWER:** Defendant, on information and belief, admits that Mohammed pled guilty to a single count of theft of government funds while he was off-duty. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

60. Defendant Watts pleaded guilty in 2013.

**ANSWER:** Defendant, on information and belief, admits that Watts pled guilty to a single count of theft of government funds while he was off-duty. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

61. In the case of Obrycka v. City of Chicago et al., No. 07-cv-2372 (N.D. Ill.), a federal

18

jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

62. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER:** Defendant denies he engaged in misconduct or any acts of abuse against others and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

63. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER:** Defendant denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

64. In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER:** Defendant denies he experienced, participated in, or observed a "code of

silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

65.     On March 29, 2019, then-Chicago Police Superintendent Eddie Johnson publicly acknowledged the code of silence, stating that some Chicago police officers "look the other way" when they observe misconduct by other Chicago police officers.

**ANSWER:**     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

66.     In October 2020, Chicago Police Superintendent David Brown acknowledged in public comments that the "code of silence" continues to exist.

**ANSWER:**     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

67.     The same code of silence in place during the time period at issue in the Obrycka case and recognized by the Mayor, Superintendent Johnson, Superintendent Brown, the Task Force, and the Department of Justice was also in place when plaintiffs suffered the wrongful arrests, detentions, and prosecutions described above.

**ANSWER:**     Defendant denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean, and denies he engaged in misconduct, including subjecting Plaintiffs to any wrongful arrest, detention or prosecution. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

68.     As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate

evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrests, detentions, and prosecutions of plaintiffs, as described above.

**ANSWER:** Defendant denies he experienced, participated in, or observed a "code of silence" as he understands that term, denies he engaged in any misconduct, including using excessive force, planting evidence, fabricating evidence, manufacturing false charges against persons at the Ida B. Wells Homes, and denies he wrongfully arrested, detained, or prosecuted Plaintiffs. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

### Claims

69. As a result of the foregoing, all of the defendants caused plaintiffs to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:** Defendant denies he caused Plaintiffs to be deprived of rights secured by the Fourth and Fourteenth Amendments. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

70. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiffs were subjected to malicious prosecution under Illinois law.

**ANSWER:** Defendant denies he subjected Plaintiffs to four malicious prosecutions. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

71. Plaintiffs hereby demand trial by jury.

**ANSWER:** Defendant admits the allegations contained in this paragraph.

### AFFIRMATIVE DEFENSES

21

Defendant Michael Spaargaren, without prejudice to his denials and other statements in his Answer to the Complaint, for his affirmative defenses to the Complaint, states:

1.      Defendant is entitled to qualified immunity because it was not clearly established that the alleged conduct violated Plaintiff's constitutional rights. At all relevant times, a reasonable officer objectively viewing the facts and circumstances then confronting Defendant Spaargaren, could have believes his actions regarding his encounter with Plaintiff to be lawful, in light of clearly established law and the information he possessed.

2.      Defendant cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless he individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3.      Defendant is absolutely immune for any testimony he may have given in plaintiff's underlying criminal case. *See Briscoe v. LaHue*, 460 U.S. 325 (1983); *Jurgensen v. Haslinger*, 295 Ill. App. 3d 139, 141-42, 692 N.E.2d 347, 349-50 (3d Dist. 1998).

4.      Defendant is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2- 202.

5.      Under the Illinois Tort Immunity Act, Defendant is not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

6.      Plaintiff's claims are barred by the applicable statutes of limitations.

7.      Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel.

8.      To the extent Plaintiff failed to mitigate any of his claimed injuries or damages,

22

including by his criminal misconduct and/or voluntary guilty plea, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his damages.

9.     Plaintiff's Complaint fails to state cognizable claims for relief that are plausible on their face.

a.     Plaintiff fails to state a fabricated evidence-based due process claim because the allegedly fabricated evidence was not introduced against him at trial and did not cause his conviction;

b.     Even if otherwise actionable, Plaintiff's guilty plea defeats his fabricated evidence based-due process claim;

c.     To the extent Plaintiff alleges a *Brady*-based due process claim, such claim fails because his allegations establish that no evidence subject to *Brady* was suppressed;

d.     To the extent Plaintiff asserts Fourteenth Amendment due process claim based on any pre-trial deprivation of liberty or attempts a federal malicious prosecution claim, those claims are not actionable as a matter of law;

e.     To the extent Plaintiff alleges a failure to intervene, such a claim has no basis in the Constitution, and the "Supreme Court has held many times that § 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J. concurring);

f.     Any derivative failure to intervene or conspiracy claims are not actionable; and

g.     Plaintiff's Fourth Amendment claim for detention without probable cause is time-barred.

24

## JURY DEMAND

Defendant, Michael Spaargaren demands a trial by jury.

Respectfully Submitted:
DEFENDANT MICHAEL SPAARGAREN

By: */s/ James V. Daffada*
Special Assistant Corporation Counsel
James V. Daffada
Thomas M. Leinenweber
Special Assistant Corporation Counsel
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
866-786-3705
jim@ilesq.com
thomas@ilesq.com

24